## DODGE *v.* DODGE.

In chancery, where a replication is put in, and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill are to be regarded as true, until they are disproved and overthrown by evidence.

The re-delivery, by a grantee to his grantor, of an unrecorded deed, with the intention and for the express purpose of having the same cancelled, and of revesting the title in the grantor, revests the title accordingly.

IN EQUITY. The allegations of the bill and answer, the matters in controversy between the parties, and the evidence upon one side and the other, are sufficiently indicated in the opinion of the court.

*D. & D. J. Clark,* Solicitors, and counsel for the complainant.

*B. F. Ayer,* Solicitor, and counsel for the defendant.

FOWLER, J.* The bill was filed April 21, 1851, and charges that on the 30th day of March, 1838, the defendant, being seized in fee of certain tracts of land situate in Goffstown, and particularly described, thereafterwards, on the same day, by his deed of warranty in common form, for a good and valuable consideration therein expressed, bargained, sold and conveyed said premises to the complainant, his heirs and assigns forever, and delivered said deed to the complainant, whereby he became seized of said premises in fee, and that he immediately entered into possession thereof, and so continued taking the rents and profits thereof for nearly eight years ; that said deed was never recorded, and that about the first day of March, 1844, the same, in some way unknown to the complainant, came into the possession of the defendant ; that the complainant had often requested him to deliver it up to him again, but that the defendant, combining and confederating with divers unknown persons to injure and wrong the complainant, had absolutely refused so to do, sometimes pretend-

* PERLEY, C. J., having been of counsel, did not sit.

ing that the complainant never had any such deed or the possession of said premises, and sometimes that said deed had been re-delivered by said complainant to the defendant, for the purpose of being cancelled and to revest the title of said premises in the defendant, and that by virtue of such re-delivery the title had so revested, and the defendant had thereby full right and authority to sell and dispose of said premises, the contrary of all which is averred to be true.

The bill prays that the defendant may be required to answer specifically the allegations of the bill, and set forth the deed of March 30, 1838; that he may state particularly whether, at any time since the date of the same, he has claimed to own the premises therein described, and offered to sell the same, or cherished any intention of selling the whole or any portion thereof; that the defendant may be compelled to deliver said deed to the complainant, and that he may be restrained by injunction from disposing of said premises or any portion thereof.

The answer was filed October 7, 1851, and admits the defendant's seizin of the premises in controversey on the 30th day of March, 1838, and that on that day he conveyed the same to the complainant by deed of warranty, which is set forth at length; that the conveyance was made in pursuance of an arrangement entered into between the defendant and his two sons, the complainant and John G. Dodge, whereby he conveyed his real estate to them in consideration of their executing to him a bond, or other writing, for the support of himself and wife, and the delivery to them annually of one third part of the produce of said real estate, the erection of a tomb, and the performance of various other matters, such as the payment of legacies to the daughters, &c.; that at the same time with the premises in controversy, but by a separate deed, the defendant conveyed to the complainant a farm in Windsor, and half a farm in Stoddard, upon the same consideration, and as part of the same arrangement; that under these deeds the complainant entered upon and took possession, and for several years carried on the premises conveyed to him, complying with the terms of the bond as to the

delivery to him of one third of the crops yearly, &c. ; that in the latter part of 1845 the defendant came to him, complained that his duties under the arrangement which had been entered into were onerous, expressed his unwillingness further to fulfil and perform the same, and desired to make some arrangement to be released therefrom ; that the defendant, not being able to pursuade the complainant to continue to fulfil his obligations with good feeling, it was then agreed between them, that the defendant should receive back the premises in controversy from the complainant, and that complainant should thereafter hold the other property conveyed to him, and certain stock upon the Windsor farm, exonerated from any obligation to deliver annually to the defendant one third of the income thereof, and be exonerated from all the obligations of the bond or other writing given to the defendant by himself and his brother, John G. Dodge ; that at that time, in pursuance of the arrangement thus made, the complainant delivered and gave up to the defendant his unrecorded deed of the premises in controversy, with the intention and for the express purpose of its being cancelled, and of revesting in this defendant the title to the whole of said premises, and the defendant thereupon received and has ever since held the same for those purposes. At the same time, in pursuance of said arrangement, and in consideration of the re-delivery of said deed for the purposes aforesaid, the defendant gave to the complainant the stock on the Windsor farm, and agreed that he should ever thereafter hold all the premises before conveyed to him, except the premises thus relinquished, free from any claim of the defendant for any portion of the annual income, and that he should be entirely exonerated and discharged from all the obligations of the bond or other writing made by him and John G. Dodge on the 30th day of March, 1838 ; that the complainant took said stock and had ever since carried on the real estate conveyed to him, without rendering any portion of the income thereof to the defendant, or the defendant's making any claim therefor ; that the defendant immediately thereafterwards took possession of the premises in controversy, and occupied them without interference

by the complainant until about the time of the filing of the bill in this case, when the complainant unjustly-claimed them; that since the surrender to him by the complainant of the deed thereof, the defendant ever has and still does claim the premises in controversy as his own property, and that he has full power to sell and dispose of the same at pleasure. The answer denies all unlawful combination or conspiracy, &c.

The replication is general, denying and taking issue upon the correctness of the defendant's answer.

Evidence has been taken at great length on both sides; that by the complainant with a view to impeach the answer, principally by showing statements and admissions of the defendant himself inconsistent therewith; and that by the defendant for the purpose of corroborating and confirming its truth, by showing acts, statements and admissions of the complainant, and some of his principal witnesses, in accordance with all its material averments. There is, moreover, an attempt by the complainant to rebut and avoid the effect of some of these acts, statements and admissions on the part of himself and other members of the family, who are important witnesses in his favor, by undertaking to show that those acts, statements and admissions were done and made at the request of the defendant himself, and as part of a family arrangement to deceive the public and avert a threatened prosecution of the defendant for perjury, while the very evidence offered for this purpose shows not only that no perjury had been committed, but that the very persons who entered into this false and fraudulent arrangement to avoid a prosecution, possessed within their own breasts the knowledge of facts which would have shown beyond all controversy that no such crime was or could have been committed.

So also there is evidence offered by the defendant, tending very strongly to show a conspiracy or combination between the complainant in this suit, and the complainant in another suit against him, commenced about the same time, to prevent the defendant from exercising that control of undisputed ownership over the premises in controversy to which he contends he was

Dodge *v.* Dodge.

entitled, and which, if the evidence is to be relied on, this complainant had himself admitted him to possess.

On some points and in regard to many of the matters put in issue in the progress of the testimony, there are very serious and sometimes apparently inconceivable conflicts of evidence. But these are generally upon questions comparatively disconnected from the main controversy, and therefore not necessarily affecting the result between these parties.

There are some things connected with this case and its progress, extremely unpleasant as well as remarkable. It is a suit brought by a son against his father, charging him with gross fraud, and an attempt, by wrongfully retaining in his possession a title deed, to deprive his offspring of a valuable property. At the time of filing the bill and answer, the old gentleman is stated in the argument to have been eighty-five years old, and has since deceased. In his answer a state of facts is deliberately and unequivocally set forth under oath, strictly responsive to the bill, and constituting a full, complete and perfect defence to the suit. The truth of this answer is denied, and a persevering effort made, relying chiefly for proof, in all essential particulars, upon family relatives, to impeach and contradict the answer, as false and fraudulent, in detail as well as in general. After the decease of the father this effort is persisted in, and a bill of revivor has been filed since the last term, and the personal representative of the deceased brought in to abide the result of the suit. These are some of the circumstances that have given to the consideration of the case an importance and a prominence in the minds of the court which it would not otherwise have possessed.

We have given to the evidence that careful consideration which its voluminousness and the peculiarity of the circumstances involved have seemed to demand. The defendant's answer being responsive to the bill, must stand unless overthrown, and the burden of proof is upon the complainant to show that the answer is false. From the character of the answer we think it obvious that the defendant must have known whether the statements contained in it were true or false. There was no opportunity for unintentional mistake or error.

Dodge v. Dodge.

It very clearly appears, from the evidence on both sides, that the complainant entered upon the premises in controversy immediately after the execution of the deed of March 30, 1838, and continued to occupy and improve the same as his own until February, 1846, yielding and producing annually to the defendant one third of the crops, not only of these premises but of the farm in Windsor. He then removed on to the Windsor farm, disposed of the stock upon it, and received its entire crops to his own use, while the defendant took possession of the premises in controversy, carried on and improved them, procured insurance upon the buildings in his own name, had all the taxes on them assessed to him, paid the taxes and insurance, and in every way managed them and appropriated the income thereof to his own use, as if they had been his undisputed property, without any objection or interference by the complainant, until about the time of the commencement of this suit. In September, 1849, the defendant's wife, the mother of the complainant, died. In December, 1849, a Mrs. Johnson was employed to keep house for the defendant, and in June, 1850, she became his wife. Early in 1850 a misunderstanding arose between the defendant and his two sons, and in the latter part of that year the complainant claimed the premises in controversy, and the two sons insisted that they were entitled to whatever personal property he might leave at his decease. In 1851 this suit and another were commenced by them in the Superior Court.

These facts are indisputably proved, and they are all in accordance with the defendant's positions. His statements are, moreover, corroborated by the testimony of some fifteen or sixteen witnesses, who show most conclusively that for about four years after the complainant left the premises, both himself and his brother gave substantially the same account of the arrangement between the complainant and defendant, which the defendant has stated in his answer. Many of these witnesses are men of high character and moral worth, and nothing could induce the belief that they are mistaken in their testimony.

The defendant's answer, then, aside from the force given to it

by the sanction of his oath at his advanced age, is sustained by the admitted facts of the case in relation to the occupation of the premises, and the general relations and conduct of the parties themselves, as well as by the concurrent statements of both the sons and some of the other witnesses for the complainant, in reference to the transaction, for the period of nearly four years.

Is the testimony for the complainant sufficient to overthrow and overcome the answer thus fortified and sustained? We think not. Even disregarding entirely the testimony of Mr. and Mrs. Nutt, which, if believed among other things, tends very strongly to show a base conspiracy of the two sons to wrest this property from the old gentleman and prevent his having it in his power to confer any pecuniary benefits upon his second wife, we think the complainant's evidence comes very far short of destroying the answer. It is true that a large number of witnesses are produced, who undertake to narrate statements and admissions made by the old gentleman, inconsistent with the theory he now sets up. But, aside from the fact that many of these witnesses are exceedingly weakened, if not entirely discredited, by their cross-examination, it is very singular that at least six of them swear to statements and admissions of that character, made after this controversy had arisen, and three to such statements and admissions made long after the answer itself had been filed in this case. It may not be impossible that such statements and admissions should have been made, but evidence to show them ought to be of the strongest and most incontrovertible character, especially where they are to be proved against a man of more than four-score years. It furthermore is abundantly shown by the evidence, that many of the complainant's witnesses cherish feelings of great hostility towards the defendant and his family. And, when some of the witnesses are called the second time to prove that for nearly four years, whenever they spoke of the premises now in dispute, they were themselves guilty of falsehood in representing, as true, almost the precise condition of things now claimed as verity by the old gentleman, and that this was done as a family arrangement, merely at his request, to shield

him from a threatened prosecution for perjury, which it was fully within the knowledge of the family he had not been guilty of, it is not too much to say that the testimony of such witnesses in matters about which there is conflicting evidence, is to be received with many grains of allowance. There is, too, something almost incredible in the detailed recital of lengthy conversations by some of these witnesses, especially when the fact is taken into consideration, that at the time of the conversations thus minutely detailed several years after their occurrence, the witnesses themselves were mere children, hardly capable of understanding or appreciating the effect or tendency of what they now undertake so particularly to remember and narrate.

But when, to the other testimony in the case, we add that of Mr. and Mrs. Nutt, the balance is overwhelmingly against the complainant and in favor of the defendant's answer. Mrs. Nutt is a daughter of the defendant, and a sister of the complainant, and there would seem to be nothing in the other evidence in the case to throw discredit upon her testimony. Yet she and her husband not only sustain the defendant's version of the transaction between himself and the complainant, in regard to the premises in dispute, but they both testify, fully and particularly, to a distinct proposition made to them by the complainant in February, 1850, substantially to this effect: that if they would keep quiet, he and his brother would work it so that the defendant should not have it in his power to give to the woman whom he subsequently married either the premises now in dispute or any thing else, and *they* should be a thousand dollars better off for it. Here is evidence strong and conclusive, if it is believed, for there can be no mistaking the meaning of such a proposition, not only of base corruption and a conspiracy to defraud the old gentleman and his expected wife of their just rights, but a gross and palpable attempt, by the offer of a large inducement, to suppress testimony and subvert the course of justice, such as should render the guilty party forever infamous in the estimation of the good and virtuous.

On the whole we are of opinion, not only that the evidence

entirely fails to overthrow the answer, but that the answer stands fully sustained and corroborated by it. The complainant has, therefore, failed to establish any right to compel the surrendering up to him of the deed of the premises in controversy, or to interfere in any way with the occupation or disposition of them in the hands of the defendant, his representatives, or heirs. Those premises became the absolute property of the defendant, upon the re-delivery to him by the complainant of the deed of March 30, 1838; for it is well settled in this State, that the re-delivery, by a grantee to his grantor, of an unrecorded deed, with the intention and for the express purpose of having it cancelled, and of re-vesting the title to the premises therein described, in the grantor, has precisely the effect intended, upon the principle of estoppel. *Tomson* v. *Ward*, 1 N. H. 9; *Farrar* v. *Farrar*, 4 N. H. 191; *Mussey* v. *Holt*, 4 Foster 252.

The bill, then, must be dismissed, with costs to the defendant.